## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No: 21-CR-28 (APM)** |
| | : | |
| **JOSHUA  JAMES,** | : | |
| *Defendant* | : | |

### OPPOSITION TO GOVERNMENT'S MOTION TO REOPEN DETENTION HEARING

COMES NOW the accused, Joshua James, by counsel, and respectfully moves this Honorable Court to deny the government's request to reopen the detention hearing.  Their request, which amounts to a last ditch effort to seize another bite at the detention apple, should be denied because it does not meet the requirements under 18 U.S.C. § 3142(f) to re-open a detention hearing.  First, they have not presented new information that was previously unavailable to them; second, the information proffered by them does not have a material bearing on whether there are a combination of conditions that can reasonably assure the safety of the community.  Moreover, even if the Court were to grant the Government's request for a hearing on the matter, the evidence proffered by the Government in the pleading does not change the conclusion that there are conditions that can reasonably assure the safety of the community, as demonstrated by the fact that in the nearly two weeks since Mr. James's release, he has steadfastly complied with every condition required of him by this Court.

### BACKGROUND

On March 8, 2021, the Government filed a Criminal Complaint under seal charging Mr. James with obstructing or impeding an official proceeding, in violation of 18 U.S.C. § 1512 (c)

(2), 2, and with a misdemeanor charge of entering a restricted building or grounds, in violation of 18 U.S.C. 1752(a)(1) and (2).  A sealed arrest warrant issued the same day. One day after his sealed criminal complaint and arrest warrant were filed, Mr. James was arrested *without incident* shortly after he left his home in Alabama (a home he shares with his wife and their three children) and drove to work.  At his Rule 5 hearing later that same day, Mr. James waved his right to an identity hearing and a detention hearing and preliminary hearing was scheduled for March 11, 2021.

On March 11, 2021, the preliminary hearing and detention hearing was conducted before Magistrate Judge Gray M. Borden in the Northern District of Alabama.  At the conclusion of the hearing, the court denied Mr. James's request for release.  It ruled that Mr. James did not pose a flight risk— a fact conceded by the Government at the start of the hearing — but that he did pose a risk to the safety of the community.[1]

On March 23, 2021 (and before), undersigned counsel contacted the Government to advise them that counsel had been retained and that Mr. James intended to request a bond review.[2]  On March 31, 2021, the Government filed a third superseding indictment in the Criminal Case No. 1:21CR28.  The indictment added Mr. James and Mr. Minuta as defendants. Each was charged with one count of conspiracy in violation of 18 U.S.C. § 371, one count of

---

[1] As previously detailed in Mr. James's motion to revoke the detention order (docket entry 142), the Magistrate Court failed to make the requisite findings under 18 U.S.C. § 3142(f) to justify conducting the detention hearing in the first place, since it did not find that Mr. James posed a serious risk of obstructing justice, nor did it find that Mr. James posed a risk of threatening, injuring or intimidating a prospective witness or juror.

[2] On March 23, 2021, undersigned counsel sent an email to the Government stating "Hi Troy, I just spoke to a clerk in Alabama in an effort to explore ways to keep [Mr. James] in Alabama until we have had our bond hearing in DC. She may contact you to discuss their zoom capabilities. I have [sic] her your email. Her name is Marley.".

obstruction of an official proceeding and aiding and abetting in violation of 18 U.S.C. § 1512(c)(2), 2, and entering and remaining in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(1).[3]

From his arrest on March 9, 2021, until April 9, 2021, Mr. James was continuously held in custody in Alabama.  On April 9, 2021, this Court held a hearing on Mr. James's motion to revoke the detention order pursuant to 18 U.S.C. § 3145(b).  The Government filed two pleadings in opposition to Mr. James's motion; an opposition and a supplemental opposition. *Docket entries* 146 and 147.  The hearing lasted nearly two and one-half hours.  During the hearing, the government proffered evidence it recovered from Mr. James's cell phone,[4] in addition to still shots from CCTV footage.  Additionally, the Court permitted both parties to offer extensive argument.  At the conclusion of the lengthy hearing, the Court ruled in favor of release. In its ruling, the court first concluded that the govt had presented evidence to establish a substantial risk of obstruction to justify a detention hearing under § 3142(f).  On this point, however, the Court stressed that the evidence justifying the finding of a risk of obstruction had not been presented at the initial detention hearing.  The Court went on to hold that the Magistrate Court had erred in granting the Government's initial request for detention because at the time of the initial hearing, no evidence was presented to support a finding of a risk of obstruction.  That error caused Mr. James to be wrongfully detained for 30 days.  At the § 3145(b) hearing, this Court further concluded that although Mr. James posed a risk of danger to the community, there was nevertheless a combination of conditions that could reasonably assure the safety of other

---

[3] Mr. Minuta was ordered released on March 8, 2021.  Although the Government opposed Mr. Minuta's release at the detention hearing before the magistrate judge in the arresting district, it never sought to file a motion with this Court to review the release order pursuant to 18 USC § 3145 (b).

[4] Mr. James's cell phone was seized by federal agents on March 9, 2021.

persons and the community.  Those conditions, which the Court imposed upon Mr. James, included (but were not limited to):  home incarceration consisting of "24-hour-a-day lock-down at your residence except for medical necessities and court appearances or other activities specifically approved by the court"; GPS monitoring; high intensity supervision by Pretrial Services; surrender any passport;  prohibition on possessing any firearm or other weapon; and a prohibition on the use of electronic devices capable of connecting to the internet.

Since his release from incarceration on April 9, 2021, Mr. James has complied with all conditions of his release.  Notwithstanding Mr. James's compliance with the Court's conditions, a mere seven days after this Court's ruling, the government filed a motion seeking to to re-open the § 3145(b) hearing and be heard on the issue of detention for a third time.

## LEGAL ARGUMENT

18 U.S.C. § 3148 provides the Government a clear and unfettered path to revoke an order of release where a defendant is accused of violating the conditions of his release.  *See* 18 U.S.C. § 3148 (a) and (b).  In contrast, 18 U.S.C. § 3142 (f) provides a far more limited avenue of relief for the government when it seeks to reopen a detention hearing and revoke the release order of a defendant who has *not* violated the conditions of his release.  It provides, in relevant part:

> [t]he hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community.

*Id.*

In sum, before a judicial officer can reopen a detention hearing at the request of either party, it must first make a finding that there is; i) new information; and ii) that the new information has a

material bearing on the issue of whether there are conditions that can reasonably assure the

defendant's appearance and the safety of the community.

## I.   The Government's Newly Presented Information is Insufficient to Warrant Reopening of Detention Hearing

Courts across the country narrowly construed the new information requirement for

reopening a detention hearing.   *See, e.g. United States v. Turino*, No. 2:09-cr-132-JAD-GWF,

2014 U.S. Dist. LEXIS 146965, at *3 (D. Nev. Oct. 15, 2014) ("This provision is strictly

interpreted: if evidence was available at the original hearing, no rehearing is granted. Parties

must be diligent in bringing all material evidence the first time a hearing is held."); *United States

v. Spring*, No. 14-10303-RGS, 2014 U.S. Dist. LEXIS 162549, at *3-7 (D. Mass. Nov. 20, 2014)

(denying government's motion to reopen detention hearing and stating "[i]n applying Section

3142(f) of the Bail Reform Act, courts have interpreted the language "not known to the movant

at the time of the hearing" to include information about which the litigant should have known

and presented at the original detention hearing.); *U.S. v. Jerdine*, No. 1:08 CR 00481, 2009 U.S.

Dist. LEXIS 117919, 2009 WL 4906564 at *3 (N.D. Ohio, Dec. 18, 2009) (new evidence must

consist of information unavailable at the initial detention hearing showing "truly changed

circumstances."); *U.S. v. Rodriguez-Adorno*, 606 F. Supp.2d 232, 238-239 (D.P.R. 2009) (a party

seeking to reopen detention must show how the evidence was discovered and why it was

previously unavailable; conclusory allegations that information is newly discovered do not

suffice).

The rationale for the new information restriction is discussed at length in *United States v.

Flores,* 856 F. Supp. 1400, 1406-07  (E. D. Cal. 1994):

There  are very few proceedings in federal practice which encourage a party to be less than diligent in bringing forth all material evidence the first time a hearing is held. Generally, reconsideration of a decided matter based on the presentation of additional evidence requires good cause for the failure to present that evidence initially. ... A rule that would not discourage a party for failing to acquire readily available evidence for presentation the first time is a rule that encourages piecemeal presentations. Judicial efficiency is not served by such a practice.

Moreover, detention hearings are an important part of criminal proceedings. It is significant to a defendant when the court orders that he or she spend all pretrial time incarcerated--time that ranges from four months to several years depending on the complexity and events of the case. ... Motions on the part of the government to detain a person pending trial should be viewed as a serious matter. *Therefore, when the government makes repeated motions for detention because it has initially failed to present evidence that was readily obtainable, the process appears "stacked" or "rigged." The government should not be allowed to schedule seriatim hearings for detention until it "gets it right."*

Finally, detention hearings create considerable expense for the defendant both in terms of resources and emotional stress. In the event that counsel is appointed for the defendant, the taxpayer is made to pay double for the non-diligence of the government in failing to acquire and present readily obtainable evidence for the first hearing.

Id. (emphasis added).  In *Flores*, the government moved to reopen the defendant's

detention hearing one week after the initial detention hearing, based upon additional evidence

related to: i) multiple separate incidents of prior bad acts committed by the defendant (including

aggravated assaults committed against his then pregnant girlfriend and other racially motivated

assaults committed against other individuals); and ii) multiple instances of the defendant

violating the conditions of his release by engaging in prohibited contact with witnesses in the

case.  *Id.* at 1407-09.  Although the court eventually ruled in favor of detention, due in part to

the defendants violations of the terms of his release,  the court struck and refused to consider

some of the "new" evidence that the government sought to admit on the grounds that the

government had an opportunity to review it prior to the initial hearing.   In support of its ruling,

the Court noted:

> The government had the opportunity to marshal its evidence for detention long before
> the arrest of this defendant.  … This is not the case where the government was rushed
> into arresting the defendant, and simply did not have enough time to develop its deten-
> tion facts.

> Yet, the government gave no legitimate reason why some of the past act evidence at the
> reopened hearing, held a scant week after the initial hearing, was not available for the
> initial hearing. The government either greatly misjudged the type of evidence required to
> detain a defendant as a danger to the community … or the government really does
> believe it can have as many bites at the detention apple as it deems fit.  Neither
> misconception should be encouraged by a rule that permits the reopening of a detention
> decision based on new facts that easily could have been presented at the initial hearing.

*Id*. at 1407.

The case of *United States v. Stanford*, 341 F. App'x 979, 984 (5th Cir. 2009), provides

another example of the rigorous scrutiny courts have applied to standards for reopening detention

hearing.   In *Stanford*, 341 F. App'x 979, 984 (5th Cir. 2009), the 5th Circuit held that the district

court did not abuse its discretion when it denied defendant's motion to reopen a detention

hearing without requiring the government to draft a response. There, the defendant filed a motion

to reopen within a week of the district court's Detention Order.  In ruling that the district court

did not abuse its discretion in denying the defendant's motion, the Fifth Circuit pointed out that

the defendant's pleading made only conclusory allegations that the information he sought to

submit was newly discovered, and provided no indication of how the evidence was discovered or

why it had been previously unavailable. The court also pointed out that the defendant was given

numerous opportunities to call witnesses before the district court and that the defendant never

asked for more time to locate witnesses. Nevertheless, a week after the detention determination,

he sought to introduce the affidavits of friends, family, and former employees. In that instance, the Fifth Circuit concluded that the evidence could have been presented earlier, and therefore did not meet the standard of being newly discovered or previously unavailable.

Similarly, in *United United States v. Dillon*, 1415 (1st Cir. 1991), the First Circuit upheld the district court's decision not to reopen the detention hearing.  Notably, the district court rejected the defendant's argument that letters and affidavits, which were not in existence at the time of the initial hearing, amounted to "information . . . not known to the movant at the time of the hearing." *Id*. at 415.  It pointed out that the defendant had sufficient time to obtain the affidavits and letters, or to arrange for the personal appearance of any witnesses, where the initial detention hearing was held nine days after defendant's arrest and the 18 U.S.C. § 3145(b) hearing before the district court was heard 17 days after his arrest.  Accordingly, the First Circuit concluded that the *information* contained in the affidavits and letters was available to defendant at the time of the initial hearing and therefore the district court's decision not to reopen the detention hearing was not in error.); *see also States v. Lopez-Diaz*, 2020 U.S. Dist. LEXIS 124714, at *3-4 (E.D. La. July 15, 2020) (change in defense counsel does not alter the determination of whether information was available to Defendant at the time of his detention hearing).  *Compare United States v. Peralta*, 849 F.2d 625, 626-27 (D.C. Cir.1988) (court was authorized to reopen the detention hearing when previously *nonexistent*, material information was brought to light, namely, the court's adverse ruling at a suppression hearing that postdated the initial detention hearing).

Here, the government had more than ample time and opportunity to establish its case for detention and to present the evidence they now claim is "new" regarding Mr. James's actions

inside the Capitol on January 6, 2021.  They had the benefit of two lengthy evidentiary hearings — one before the United States Magistrate Court in the Northern District of Alabama on March 11, 2021 and another before this Court on April 9, 2021.  Moreover, the had ample notice of Mr. James's intention to request a § 3145(b) review, since more than two weeks prior to the April 9 hearing, undersigned counsel notified the government of its intention to seek release under 18 U.S.C. § 3145 (b).  And, in the intervening 30 days between the two hearings, the government chose to present its case against Mr. James to a grand jury, resulting in an indictment against Mr. James for his alleged actions on January 6, 2021.

 The "new evidence" pointed to by the government in its latest pleading consists of video footage purportedly from two body cameras worn by D.C. Police on January 6 and a video from January 6 that was allegedly recovered from Mr. James's cell phone.  All of the government's "new evidence" was created on January 6.  The government and/or law enforcement has been in possession of the body camera footage since January 6 — more than three months prior to Mr. James's April 9, 2021 hearing.  The government has been in possession of Mr. James's cell phone since his arrest on March 9, 2021 — one month prior to the April 9, 2021 hearing. Moreover, at the April 9 hearing and in their pleadings leading up to the April 9 hearing, the government repeatedly referenced information that they seized from Mr. Jame's cell phone in support of their argument for detention.  It defies common sense to now suggest that a video that was recovered from that same cell phone is "new evidence" that was previously unavailable.   To quote from the *Flores* case, "when the government makes repeated motions for detention because it has initially failed to present evidence that was readily obtainable, the process appears

"stacked" or "rigged." The government should not be allowed to schedule seriatim hearings for detention until it 'gets it right.'" *Flores*, 856 F. Supp. 1400, 1406.

## II.     The Government's Newly Presented Information Does Not Have A Material Bearing On The Issue Whether There Are Conditions Of Release That Will Reasonably Assure The Safety of Any Other Person And The Community.

The Court may reject a motion to reopen either because the evidence to be presented is not new or because it would not have a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of the person[5] and the safety of any other person and the community." *See* 18 USC 3142(f). The government's request to reopen Mr. James's detention hearing also fails the second prong.

All of the information that the government now seeks to present relates to Mr. James's alleged actions on January 6, 2021.  Setting aside, for the moment, the great liberties that the government takes in characterizing Mr. James's actions on January 6, their pleading essentially reiterates a prior claim they made at the last detention hearing (that Mr. James pushed past police on his way inside the Capitol) and they additionally claim that video footage depicts Mr. James "aggressively yanking" one officer, grabbing the shoulders of another and attempting to grab an

---

[5] At the initial detention hearing in Alabama, the government conceded and the court found that Mr. James did not pose a risk of flight.

officer's shield.[6]  Notably, in its motion the government glosses over the fact that Mr. James was

initially attempting to assist one of the officers who appeared to be succumbing to the crowd

_____

[6] In comparison to Mr. James's alleged conduct, the following January 6, 2021 defendants, who are on release, are accused of the following conduct:

• *United States v. Mark Leffingwell*, 1:21-cr-00005: Mr. Leffingwell is facing seven criminal charges, including two counts of assault on a federal officer under section 111. He allegedly pushed past a wall of law enforcement officers who were attempting to keep people out of the Capitol and then repeatedly punched an officer with a closed fist. The government did not object to Mr. Leffingwell's release.

• *United States v. Matthew Miller*, 1:21-cr-00075: Mr. Miller is charged with 9 offenses, including assault with a dangerous weapon (fire extinguisher) on a federal officer. He is also accused of using a crowd barrier fence as a makeshift ladder to scale the walls of the Capitol. Mr. Miller was also charged with offenses under section 1752 involving using or carrying of a dangerous weapon.

•  *United States v. John Earle Sullivan*, 1:21cr00078: accused of yelling "let's burn this (expletive) down after the mob breached a security barrier, entering the capital through a broken window and telling officers inside to back down. Charges include violent entry and disorderly conduct on capitol grounds.

• *United States v. Rachel Powell*, 1:21cr00079: charged with using a battering ram to break a large window of the Capitol so that she and the rioting crowd could force their way into the Capitol. Accused of using a bullhorn to direct rioters inside the Capitol toward lawmakers and stating "people should probably coordinate together if you are going to take this building." Among the eight charges against her, Ms. Powell is accused of entering or remaining in a restricted building with a dangerous weapon (ice axe and large wooden pole), felony destruction of property and committing an act of violence on Capitol grounds.

• *United States v Vitali Gossjankowski*, 1:21-cr-00123: Mr. Gossjankdowski has been charged with six offenses, including assaulting a federal officer with a dangerous weapon (a Taser). The statement of facts in support of the complaint describes that an officer near Mr. Gossjankowski suffered a heart attack and was hospitalized after being Tased multiple times on the back of his neck. He is also charged with section 1752 offenses for being in restricted areas of the Capitol while carrying or using a dangerous weapon. The government did not object to his release.

• *United States v. Matthew Council*, 1:21-cr-00207: Mr. Council faces six charges, including assaulting a police officer.  He is alleged to have forced his way through a police line inside the Capitol during which process he pushed a female uniformed Capitol police officer and had to be pepper sprayed. The government did not seek Mr. Council's detention.

• *United States v. Chad Jones*, 1:21-cr-00213. Mr. Jones was charged with nine offenses, including assault on a police officer with a dangerous weapon or infliction of bodily injury. He allegedly used a flagpole to repeatedly strike and break the glass of the doorway where Ashley Babbitt was shot and killed as she climbed through a broken pane. Just before Mr. Jones started breaking down the glass, lawmakers and staff were seen on the other side of the doors from the angry mob, being evacuated. As described in the complaint, "[a]n officer inside the Speaker's Lobby, facing the door with a gun raised, can be seen at the [left] side of the video in the close vicinity of the doorway." As the officer points the gun and fires at Ms. Babbitt, Jones could still be seen next to the door with the pole, just to the left of where Ms. Babbitt was shot. The government did not request Mr. Jones's detention.

• *United States v. Nicholas DeCarlo and Nicholas Ochs*, 1:21-cr-00073: Mr. DeCarlo and Mr. Ochs are charged with conspiring with other Proud Boys to stop Congress's certification of the election results. Mr. Ochs is allegedly a founding member of the Proud Boys Hawaii chapter. They allegedly engaged in planning and fundraising for the event and, on the day of the event, forcibly stormed past barricades. In a video on social media, DeCarlo stated that he came to DC to stop the vote counting. Another video of the two of them is titled "Twas the Night Before REVOLUTION!!!" They are alleged to have defaced the Memorial Door of the Capitol with the words "Murder the Media." Ochs is also charged with stealing flex cuffs from a Capitol police officer. The government did not seek their pretrial detention.

around him.  In the video, the individual purported to be Mr. James is clearly heard asking the

officer "[do] you want out?"  He asks the officer this question not once, but on two occasions, to

be sure.  Only then does he allegedly grab for the officer and yank him in the only direction that

he could have yanked him - forward and out.  The Government's pleading misleadingly suggests

that Mr. James tried to pull the officer away from safety and into a crowd of rioters; this

mischaracterization is apparent from the video which shows that the officers were already

surrounded by rioters when Mr. James asks him "you want out?"  From the video[7] it is also

apparent that Mr. James's efforts to assist the first officer were met with violence by other

officers (who, given the chaotic situation, did not have the luxury of time to accurately identify

the intentions of each individual in the crowd).  After Mr. James was struck he allegedly started

to yell and become agitated.[8]  Within minutes, however, he exited the building. The government

did not seek to arrest Mr. James for three months.  When they did so, Mr. James submitted to the

authority of the arresting officials without incident.  In fact, according to the arresting agent's

testimony at the Alabama detention hearing, when Mr. James was arrested he expressed gratitude

to the agent for conducting the arrest outside of the presence of Mr. James's family.  Tr. 29. Mr.

James posed such a low risk of threat that the arresting agent removed his handcuffs for the one

and one-half hour drive from Arab, Alabama, to the detention center for the Northern District of

Alabama. *Id.*

---

[7] The body camera footage that the Government has attached as Exhibit 1 to their pleading does not
contain all of the officers' body cam footage from inside the Capitol.

[8] The fact that this confrontation stemmed from Mr. James's initial attempt to assist an officer is
consistent with portions of the Signal chats that occurred the next day wherein a member discussed the
fact that members of Mr. James's security detail assisted in escorting police officers who wanted out.

Significantly, none of the information that the government now seeks to introduce relates to conduct that occurred after January 6, 2021, nor does it relate to an alleged leadership role or advanced plan to stop the electoral college vote. The relevant inquiry for reopening a detention hearing is whether the evidence has a material bearing on the issue of whether there are conditions that can reasonably assure the safety of any person and the community; not whether the evidence has a material bearing on whether he posed a risk of danger at the time of the offense.  When this Court ruled in favor of release, it acknowledged that Mr. James posed a risk of danger, but it found that there were conditions that could nevertheless reasonably assure the safety of the community. It based this determination on several factors, including the fact that Mr. James has no prior criminal convictions and no history of violence, that he honorably served in the United States Army and earned a Purple Heart, that he is married with children, that he has tremendous community support as evidenced by letters submitted to the Court on his behalf, and that he has contributed to making his community a better place — both as a successful small business owner and as a volunteer providing disaster relief efforts.  The Court then placed Mr. James on several highly restrictive conditions of release, to include home incarceration, GPS ankle monitor, a prohibition from using electronic devices capable of connecting to the internet, a prohibition from possessing firearms or weapons, high intensity pre-trial supervision and mental health treatment.  Since his release, Mr. James has complied with every condition.  The only truly "new"evidence that has a material bearing on the inquiry of whether there are conditions that can reasonably assure the safety of any person and the community is the fact that Mr. James has complied with each of this Court's conditions since the day he was released.  This Court should decline the government's request to reopen the detention hearing.

**CONCLUSION**

For all of the foregoing reasons, Mr. James respectfully asks this Court to deny the

Government's request for a third hearing on the issue of detention.  In the event the Court grants

the Government's request, Mr. James reserves the right to produce new evidence in his behalf.


Respectfully submitted,

_____/s/_____

Joan C. Robin
Virginia Bar No. 44502
Law Office of Joni C. Robin, PLLC
114 North Alfred Street
Alexandria, Virginia 22314
Ph: 703-349-1111
Fax: 571-279-6851
joni@jonirobinlaw.com


_____/s/_____

Christopher Leibig, Esq.
Virginia Bar No. 40594
Counsel for Defendant
114 N. Alfred Street
Alexandria, Virginia 22314
(703) 683 4310
chris@chrisleibiglaw.com


**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of April, 2021, I will electronically file the foregoing Notice with the Clerk of Court using the CM/ECF system, which will then send a notification of said filing (NEF) to counsel of record.

_____/s/_____
Joan Robin