**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

v.                                                          Case No. 21-cr-28-APM-12

JOSHUA JAMES,

          Defendant.

**REPLY MEMORANDUM IN FURTHER SUPPORT OF THE
<u>PRESS COALITION'S APPLICATION FOR ACCESS TO VIDEO EXHIBITS</u>**

The Press Coalition respectfully submits this reply memorandum in further support of its

Application for access to three video recordings that the Government submitted to this Court in

this matter (the "Video Exhibits").  The Government has stated that (1) it submitted the Video

Exhibits in support of its Motion to Reopen the Defendant's Detention Hearing; (2) neither party

asked the Court to seal the Video Exhibits; and (3) the Video Exhibits "were intended to

influence the Court's decision on detention."  Resp. to Application for Access to Video Exhibits

at 1-2, Dkt. 300.  The Government thus agrees that the Court should grant the Application.  *Id.*

Defendant Joshua James objects to the Application, however, but he does not – and

cannot – identify any facts distinguishing this case from the many others in which the Press

Coalition's requests for video exhibits have been granted, including cases where other Capitol

riot defendants have raised objections similar to those James makes here.[1]  The Court should

therefore grant this Application as well and overrule Defendant's objections to public access.

---

[1] To date, the Press Coalition has received access to, and permission to republish, <u>every
single requested video</u> where those videos were submitted as exhibits or shown at a detention
hearing.  *See, e.g.,* Minute Order of July 12, 2021, *United States v. Harrelson*, No. 21-cr-28-
APM-10; Minute Order of July 9, 2021, *United States v. Perkins*, No. 21-cr-447-CJN-4; Minute
Order of July 6, 2021, *United States v. Jensen*, No. 21-cr-6-TJK-1; Minute Order of July 2, 2021,

**ARGUMENT**

**I.      The Video Exhibits Are Judicial Records Subject To The Public Right Of Access.**

It is inarguable that the Government submitted the Video Exhibits to this Court for the express purpose of influencing its decision on the Government's motion to reopen Defendant's detention hearing.  Under the law of this Circuit, therefore, the Video Exhibits are judicial records subject to the public right of access under the First Amendment and common law.

On April 9, 2021, the Court granted Defendant's request for release from pretrial detention.  *See* Minute Order of April 9, 2021.  Less than a week later, the Government moved to reopen the detention hearing, noting that the Court had stated it was a "close call" whether Defendant should be detained pending trial, and stating that the Government had "discovered video evidence showing the defendant assaulting law-enforcement officers inside the Capitol building."  Gov't's Mot. to Reopen the Def.'s Detention Hr'g at 1, Dkt. 163.  In support of this motion, the Government submitted to the Court three Video Exhibits: one video that "appears to have been recorded by [co-defendant Roberto] Minuta," and two video clips from Metropolitan Police Department officers' body-worn cameras.  Dkt. 163-1.  According to the Government,

---

*In re Application for Access to Certain Sealed Video Exhibits*, No. 21-mc-74-EGS; Minute Order of June 28, 2021, *In re Application for Access to Video Exhibit*, No. 21-mc-80-TJK; Minute Order of June 23, 2021, *United States v. Owens*, No. 21-cr-286-BAH; Minute Order of June 23, 2021, *United States v. Mock*, No. 21-mj-469-RMM-1; Minute Order of June 21, 2021, *In re Application for Access to Video Exhibits,* No. 21-mc-76-TJK; Minute Order of June 17, 2021, *In re Application for Access to Certain Sealed Video Exhibits*, No. 21-mc-77-RCL; Minute Order of June 17, 2021, *In re Application for Access to Video Exhibits*, No. 21-mc-83-APM; Minute Order of June 16, 2021, *In re Application for Access to Video Exhibits*, No. 21-mc-79-TNM.

In two cases, the Press Coalition has secured access over precisely the same objection this Defendant raises here – i.e., an objection that releasing video exhibits will prejudice the defense and taint the jury pool.  Mem. Op., *In re Application for Access to Certain Video Exhibits* ("*In re Klein*"), No. 21-mc-78-RC, Dkt. 7 (ordering release of videos shown at defendant's detention hearing in *United States v. Klein*, No. 21-cr-236-RC); *United States v. Jackson*, 2021 U.S. Dist. LEXIS 49841, at *13-14 (D.D.C. Mar. 17, 2021) (ordering release of videos submitted and shown at defendant's detention hearing).

Defendant is shown in these videos "engaging in a confrontation with a line of law-enforcement officers forming a barrier between the lobby and the Capitol Rotunda," as well as "forcefully grab[bing] an officer by the arm" and "grabbing [an officer's] shield and the officer's hands." *Id.* at 3-7.  The Government included in its motion both screenshots from the Video Exhibits and quotes of what Defendant is purportedly heard saying in the Video Exhibits.  *Id.*

Defendant objected to reopening of the detention hearing on the grounds that the Government was in possession of the Video Exhibits prior to the detention hearing, and that the videos did not bear on whether he should have been released on bail.  Opp. to Gov't's Mot. to Reopen Detention Hr'g at 1, Dkt. 168.  On April 27, 2021, the Court denied the Government's motion, stating that "the Government almost surely possessed this evidence at the time of Defendant's detention hearing on April 9, 2021, but simply failed to present it," and explaining that the Court may reopen detention hearings only to consider newly discovered information that "was not known to the movant at the time of the hearing."  Order at 1-2, Dkt. 183.

As this sequence of events makes clear, and as the Government confirms, *see* Dkt. 300 at 2, the Government provided the Video Exhibits to the Court for the specific purpose of influencing the Court's decision-making.  Defendant concedes the point as well.  Mot. to Seal Video Exhibit[s] and Opposing the Press Coalition's Application for Access to Video Exhibits ("Def.'s Opp.") at 3, Dkt. 302.  As a result, in this Circuit, the Video Exhibits are judicial records.  *See League of Women Voters v. Newby*, 963 F.3d 130, 137 (D.C. Cir. 2020) ("[E]very part of every brief filed to influence a judicial decision qualifies as a 'judicial record.'").

Defendant responds with an argument that he admits is not the law in this Circuit: he argues that records submitted to a court are judicial records only if "the court ultimately makes a decision about the record in question."  Def.'s Opp. at 3.  The D.C. Circuit has twice rejected this

exact proposition, however, as Defendant acknowledges. *Id.* In *MetLife, Inc. v. Financial Stability Oversight Council,* one party objected to unsealing redacted briefs, arguing that the district court did not quote from the redacted portions in its decision and thus did not rely on those sections in reaching its decision. 865 F.3d 661, 666 (D.C. Cir. 2017) (Garland, J.). The D.C. Circuit rejected this argument, recognizing that "[a] brief (or part of a brief) can affect a court's decisionmaking process even if the court's opinion never quotes or cites it." *Id.* at 667.[2]

Similarly, in *League of Women Voters*, the Government argued that sealed briefs and exhibits pertaining to a witness's sealed deposition were not judicial records because the witness's testimony related to an issue that was never reached in the underlying dispute. 963 F.3d at 136. The D.C. Circuit rejected that proposition as well, holding that "every part of every brief filed to influence a judicial decision qualifies as a 'judicial record.'" *Id.* at 137. The D.C. Circuit further observed that this rule applies even if "a court disposes of a motion or appeal in such a way as to avoid reaching one or more of the presented issues," because "[t]he fact that a court ultimately determines it need not reach a briefed issue hardly means the issue played no role in the 'decisionmaking process.'" *Id.*[3]

Here, too, the Court considered the Video Exhibits in determining that "the Government almost surely possessed [the Video Exhibits] at the time of Defendant's detention hearing on

---

[2] On this point, the Court distinguished *SEC v. AIG*, 712 F.3d 1 (D.C. Cir. 2013), which Defendant also cites here, where the records in question "were never filed with [the court]" and were produced <u>after</u> the court had already issued its relevant decision. *Id.* at 667-68.

[3] As Defendant notes, the D.C. Circuit acknowledged "there may be an exception for material inserted into a court filing in bad faith." Def.'s Opp. at 5-6 (quoting *League of Women Voters*, 963 F.3d at 136). Defendant argues that this bad-faith exception applies here because the Government ostensibly "knew it could not meet the first threshold inquiry to be entitled to reopen the hearing," *see id.*, but it is telling that Defendant never made that argument in actually opposing the Government's motion to reopen the detention hearing. Defendant offers no support at all for the notion that the Government acted in bad faith by providing the Court with evidence that, in its view, warranted placing this Defendant in detention prior to trial.

April 9, 2021."  Order at 1-2, Dkt. 183.  In fact, the Video Exhibits appear to be the only judicial records the Court considered in deciding not to reopen the detention hearing.  *Id.*  As the D.C. Circuit made clear in *MetLife* and *League of Women Voters*, therefore, the Video Exhibits are judicial records regardless of whether the Court resolved the Government's motion on its merits or on some other ground.  *Cf.* Minute Order of July 12, 2021, *United States v. Jensen*, No. 21-cr-6-TJK-1 (granting access to video exhibits, which the Government submitted in opposing another Capitol riot defendant's request for release from detention, *before* ruling on defendant's motion).

## II.  Defendant Fails To Overcome The Presumption Of Access To The Video Exhibits.

Because the Video Exhibits are judicial records, they are subject to the powerful presumption of public access under the First Amendment and the common law.  *See Press-Enter. Co. v. Super. Ct.*, 478 U.S. 1, 12-13 (1986) (holding that First Amendment right of access applies to preliminary hearings in criminal cases); *United States v. Jackson*, 2021 U.S. Dist. LEXIS 49841, at \*13-14 (D.D.C. Mar. 17, 2021) (ordering release of video exhibits submitted at a detention hearing in another Capitol riot case after concluding they are judicial records subject to the "strong presumption in favor of public access" under the common law).  In objecting to release of these Video Exhibits, Defendant fails to overcome the presumption of public access.

First, the Video Exhibits are subject to the First Amendment right of access, and Defendant cannot possibly show that continued secrecy "is essential to preserve higher values and is narrowly tailored to serve that interest."  *Dhiab v. Trump*, 852 F.3d 1087, 1102 (D.C. Cir. 2017) (Williams, J., concurring).  Indeed, the Press Coalition expressly seeks these Video Exhibits under both the First Amendment and the common law, *see* Application at 1, and

Defendant never even attempts to carry the extraordinary burden required to overcome the First Amendment right of access, nor could he possibly do so.

Second, based on the D.C. Circuit's six-factor *Hubbard* test, Defendant cannot even overcome the common law right of access to these videos. Those factors are: (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings. *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980).

**Factor 1:** This factor addresses "the need for public access to the documents at issue," *Hubbard*, 650 F.2d at 317-18, and contrary to Defendant's representation, it "weighs heavily in favor of public access," *see Jackson*, 2021 U.S. Dist. LEXIS 49841, at *17. These Video Exhibits would allow the public to see for themselves "the assault on the Capitol building on January 6, 2021 and this effort to disrupt the democratic process in counting electoral votes," which remains of "deep national importance and public interest both as to the offense conduct and individuals involved." *Id.* Because the Application advances the "strong public interest in seeing real-time images of what happened that day," *see In re Klein* at 7, Factor 1 of the *Hubbard* test strongly favors disclosure.

**Factor 2:** This factor considers "the extent of previous public access to the documents." *Hubbard*, 650 F.2d at 319. Contrary to Defendant's representation, public access to the Video Exhibits is not limited to "only the Court and the parties." Def.'s Opp. at 7-8. Rather, the Government's motion to reopen the detention hearing includes detailed descriptions of Defendant's alleged conduct as shown in the Video Exhibits, as well as screenshots and quoted

statements by Defendant.  *See* Gov't's Mot. to Reopen at 3-7.  These screenshots and quotes purportedly "depict defendant's most egregious conduct and therefore [have] already been made publicly accessible."  *Jackson*, 2021 U.S. Dist. LEXIS 49841 at \*20.  Factor 2 thus weighs in favor of public access as well.

**Factor 3:**  This factor considers "the fact that someone has objected to disclosure."  *Hubbard*, 650 F.2d at 319-22.  Here, Defendant alone has objected to disclosure of the Video Exhibits, which means that Factor 3 also favors public access.  *See Jackson*, 2021 U.S. Dist. LEXIS 49841 at \*20; *In re Klein* at 9.

**Factor 4:**  This factor considers "the strength of [any] property and privacy interests asserted."  *Hubbard*, 650 F.2d at 319-22.  Defendant argues that because one of the videos was collected from his phone, he has a privacy interest in the video, but he cannot assert <u>any</u> privacy interest in videos that "were captured while he was participating very publicly with a mob assaulting the Capitol."  *Jackson*, 2021 U.S. Dist. LEXIS 49841, at \*22; *In re Klein* at 9.  Factor 4 thus favors access to the Video Exhibits.

**Factor 5:**  This factor considers the "possibility of prejudice" to the party objecting to access.  *Hubbard*, 650 F.2d at 319-22.  Here, Defendant claims "allowing [the Video Exhibits] to be played on the nightly news or placed on the internet will all but assure that [he] is deprived of his constitutional right to a fair trial before an impartial tribunal," *see* Def.'s Opp. at 8-9, but such a speculative and unsupported assertion carries no weight at all.  *Jackson*, 2021 U.S. Dist. LEXIS 49841, at \*23 (in another case concerning access to Capitol riot videos, concluding that "defendant simply [did] not specify what prejudice may result from disclosure" given "the obvious circumstance that he has been charged with serious felony violations, based on alleged offense conduct described in detail in publicly filed documents, including the criminal complaint

and the government's briefs in support of pretrial detention"); *In re Klein* at 9-10 (rejecting a Capitol riot defendant's broad claim of potential prejudice where, as here, the parties detailed what was depicted in the videos during the hearing and in filings, and screenshots of the "most egregious conduct" were included in Government filings).

Controlling D.C. Circuit precedent rejects the very type of unsupported arguments that Defendant makes here.  In *In re NBC*, the D.C. Circuit held that the "right to inspect and copy" judicial records outweighed concerns that release might prejudice defendants' fair trial rights by tainting a future jury pool, because "voir dire has long been recognized as an effective method of rooting out such bias."  653 F.2d 609, 613-17 (D.C. Cir. 1981); *United States v. Thompson*, 1989 U.S. App. LEXIS 19909, at *3 (D.C. Cir. Oct. 13, 1989) ("[A] searching and carefully conducted voir dire of potential jurors in future trials will fully protect the defendants' rights to a fair trial without unduly impairing the public's right of access.") (citations and internal marks omitted).[4]

Moreover, Defendant's involvement in the January 6 riots is well documented.  *See, e.g.,* David K. Li, *Alabama man with ties to Oath Keepers militia arrested in connection to Capitol riot*, NBC News (Mar. 10, 2021) https://www.nbcnews.com/news/us-news/alabama-man-ties-oath-keepers-militia-arrested-connection-capitol-riot-n1260499; *Oath Keeper Affiliates Charged in Superseding Indictment for Conspiracy Leading to the U.S. Capitol Attack*, Dep't of Justice (Apr. 1, 2021) https://www.justice.gov/usao-dc/pr/oath-keeper-affiliates-charged-superseding-indictment-conspiracy-leading-us-capitol.  This previous coverage of Defendant's actions on January 6 further undermines his argument for withholding the Video Exhibits, as the D.C.

---

[4] *See also United States v. Criden,* 648 F.2d 814, 827 (3d Cir. 1981) ("the appropriate course to follow when the spectre of prejudicial publicity is raised is not automatically to deny access but to rely primarily on the curative device of voir dire examination"); *United States v. Martoma*, 2013 U.S. Dist. LEXIS 182959, at *24 (S.D.N.Y. Dec. 28, 2013) ("Numerous courts in high-profile cases have recognized that a thorough voir dire may be adequate to address concerns about the effect of pre-trial publicity on a defendant's right to a fair trial.") (collecting cases).

Circuit made clear in *Washington Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991).  There, the

Post sought access to the plea agreement of a district employee who cooperated with an

investigation into Mayor Marion Barry, and the government argued that the record should remain

sealed because it "was part of an ongoing criminal investigation that might be compromised or

that might embarrass innocent parties if publicized," because "release of the agreement may

[have made] it difficult to secure the cooperation of other witnesses," and because "the safety of

[the cooperator] and his family would have been placed at risk."  *Id*. at 283-85, 291 (D.C. Cir.

1991) (citation, internal marks, and alterations omitted).  The D.C. Circuit rejected these

speculative concerns, reasoning that the substantial amount of already-public information about

the investigation and the cooperator's involvement, including information reported by the press,

meant that unsealing the plea agreement "could hardly have posed any *additional* threat to the

ongoing criminal investigation."  *Id*. at 292 (emphasis added).  Release of these Video Exhibits

likewise does not and cannot pose any <u>additional</u> risk to Defendant, and as a result Factor 5

weighs in favor of access as well.

> **Factor 6:**  This factor considers the purpose for which the records were introduced, *see*
>
> *Hubbard*, 650 F.2d at 319-22, and here the Government submitted the Video Exhibits for the
>
> purpose of persuading the court that it should reopen Defendant's detention hearing and detain
>
> him pending trial.  That purpose tips heavily in favor of public access.  *See Jackson*, 2021 U.S.
>
> Dist. LEXIS 49841, at *23 ("[T]here is a strong presumption of public access to documents that
>
> a litigant submits with the intention that the court will rely on them.") (internal marks omitted).

Like all the others, therefore, Factor 6 weighs in favor of public access.  In sum, the

*Hubbard* test leads to the clear conclusion that the Press Coalition should receive access to the

Video Exhibits without restriction and without delay.

## CONCLUSION

For the foregoing reasons and those stated in the initial Application, the Press Coalition respectfully requests that the Court enter an order (1) directing the Government to provide the Press Coalition with copies of the Video Exhibits and (2) permitting the Press Coalition to republish those Video Exhibits without restriction.

Dated:  July 14, 2021                    Respectfully submitted,

BALLARD SPAHR LLP

*/s/ Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Lauren Russell (#1697195)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
russelll@ballarspahr.com

*Counsel for the Press Coalition*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 14, 2021, I caused true and correct copies of the foregoing to

be served via electronic mail and U.S. Mail on the following:

Christopher R. K. Leibig
LAW OFFICES OF
CHRISTOPHER LEIBIG
114 North Alfred Street
Alexandria, VA 22314
chris@chrisleibiglaw.com

Edward John Ungvarsky
UNGVARSKY LAW, PLLC
114 North Alfred Street
Alexandria, VA 22314
ed@ungvarskylaw.com

Joan C. Robin
LAW OFFICE OF JONI C. ROBIN
114 North Alfred Street
Alexandria, VA 22314
joni@jonirobinlaw.com

*Counsel for Defendant*

Jeffrey S. Nestler
Ahmed M. Baset
Troy A. Edwards, Jr.
Kathryn Rakoczy
Assistant United States Attorneys
U.S. Attorney's Office for the District of
Columbia
555 4th Street, N.W.
Washington, D.C. 20530
jeffrey.nestler@usdoj.gov
ahmed.baset@usdoj.gov
troy.edwards@usdoj.gov
kathryn.rakoczy@usdoj.gov

Alexandra Hughes
Justin Sher
Trial Attorneys
National Security Division
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20004
Alexandra.Hughes@usdoj.gov
justin.sher@usdoj.gov

*Counsel for the United States of America*

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)