UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **JOSHUA A. JAMES,** | ) | |
| | ) | Criminal No. 21-28-12 (APM) |
| **Defendant.** | ) | |
| | ) | |
| **PRESS COALITION,** | ) | |
| | ) | |
| **Petitioner.** | ) | |
| | ) | |

## ORDER

Having considered the parties' submissions,[1] the court grants Petitioner Press Coalition's Application for Access to Video Exhibits, ECF No. 297 [hereinafter Pet'r's Appl.].

*First*, the evidence at issue—three video exhibits that the government submitted in support of its Motion to Reopen Defendant Joshua James's Detention Hearing, ECF No. 163 [hereinafter Mot. to Reopen]—constitute "judicial records" subject to the common law right of access to the records of judicial proceedings. *See League of Women Voters of U.S. v. Newby*, 963 F.3d 130, 136 (D.C. Cir. 2020) (stating "that every part of every brief filed to influence a judicial decision qualifies as a 'judicial record'"). The videos so qualify even though the court's ultimate decision denying the government's request to reopen did not rest on the contents of the videos themselves. *See id.* ("The fact that a court ultimately determines it need not reach a briefed issue hardly means

---

[1] The court reviewed: (1) the Press Coalition's Application for Access to Video Exhibits, ECF No. 297; (2) the government's Response to Application for Access to Video Exhibits, ECF No. 300; (3) Defendant Joshua James's Motion to Seal Video Exhibit and Opposing Petitioner Press Coalition's Application for Access to Video Exhibits, ECF No. 302 [hereinafter Def.'s Opp'n]; and (4) the Reply Memorandum in Further Support of the Press Coalition's Application for Access to Video Exhibits, ECF No. 306 [hereinafter Pet'r's Reply].

the issue played no role in the 'decisionmaking process.'"). Nor does the court find that the limited exception for "bad faith," *see id.*, applies here. *See* Def.'s Opp'n at 5 (citing *League of Women Voters*, 963 F.3d at 136). The government may not have addressed in its motion whether it knew of the video exhibits at the time of Defendant James's initial detention hearing, an evidentiary prerequisite for reopening under 18 U.S.C. § 3142(f)(2)(B), *see* Mot. to Reopen, but the court does not view that oversight as an effort to gain an unfair strategic advantage, to intentionally prejudice the defendant, or to hamper enforcement of a court order. Finally, Defendant James complains that the rule articulated in *League of Women Voters* is "flaw[ed]" because it invites "abuse," "since arguably every part of every pleading and every exhibit to every pleading is intended to influence the court," and because the rule is "at odds with the plentitude of prior cases in the D.C. Circuit holding that not all documents filed with courts are judicial records and that what makes a document a judicial record is the role it plays in the adjudicatory process." Def.'s Opp'n at 4–5 (footnotes omitted) (emphasis omitted). But however "flaw[ed]" or "at odds" the test announced in *League of Women Voters* may be, this court is not at liberty to ignore it.

*Second*, bearing in mind the "strong presumption in favor of public access to judicial proceedings," *United States v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980), the relevant factors the court must consider under *Hubbard* favor the video exhibits' release.

With respect to the first factor—the need for public access to the documents at issue, *see id.* at 317–18, such "need" favors release but perhaps not as heavily as in other cases involving the events of January 6. The Press Coalition cites, for example, *United States v. Jackson*, No. 21-mj-115, 2021 WL 1026127 (D.D.C. Mar. 17, 2021), and *In re Klein*, No. 21-mc-78 (JDB), 2021 WL 2711706 (D.D.C. June 30, 2021), for the proposition that the "need" for disclosure is great in this case because it would allow the public to see for itself the events of January 6. *See* Pet'r's Appl.

2

at 6; Pet'r's Reply.  But both *Jackson* and *Klein* involved video exhibits that the court expressly relied upon in making a detention determination.  *See Jackson*, 2021 WL 1026127, at *5 (observing that the "exhibits played a significant and meaningful role in the adjudicatory process," including "extensive discussion" in the government's briefing, showing of the exhibits before the magistrate judge, and a "close review" of the exhibits by the court); *Klein*, 2021 WL 2711706, at *5 (stating that the court "'specifically referred to' some of the videos," which the government had played during the detention hearing, in its release decision).  Here, by contrast, the video exhibits were never played at a public hearing—the court did not hold one—and the court did not rely on the exhibits' contents to deny reopening, Order, ECF No. 183.  *See Hubbard*, 650 F.2d at 317 (observing that the public's need for access is diminished where the documents' contents were not "discussed or . . . relied upon by the trial judge in his decision").  Still, other elements support the public need.  For one, the government described the videos' contents in detail, including Defendant James's own words, and pasted multiple still images of the videos in its motion.  *See* Mot. to Reopen at 3–7.  "[T]he fact that the exhibits and attachments were referenced in the public filings of the parties may create a public need for them." *EEOC v. Nat'l Child.'s Ctr., Inc.*, 98 F.3d 1406, 1410–11 (D.C. Cir. 1996).  Additionally, the public's need is supported by the fact that the videos depict "issues of major public importance related to the conduct not only of the defendant[] but also of government law enforcement agents." *In re Nat'l Broad. Co.*, 653 F.2d 609, 620–21 (D.C. Cir. 1981).  Thus, although the videos' contents in this case were not central to the court's decision, these public-facing attributes of the videos favor their release.

The second factor—previous public access to the video exhibits, *see Hubbard*, 650 F.2d at 318—favors release, but again not to the same degree as in other January 6 cases.  The video exhibits were never shown in open court, and although the government delivered them to the

clerk's office, the clerk's office did not keep a copy to make them available to the public. *See* Def.'s Opp'n at 7–10. On the other hand, as noted, the government's motion describes the videos' contents in detail and includes still images from the videos. This limited prior public access tips in favor of full release of the videos. *See In re Nat'l Broad. Co.*, 635 F.2d 945, 952 (2d Cir. 1980) (noting, in Abscam public corruption criminal prosecutions, that "[t]hough the transcripts of the videotapes [showing bribe payments to public officials] have already provided the public with an opportunity to know what words were spoken, there remains a legitimate and important interest in affording members of the public their own opportunity to see and hear evidence that records the activities of a Member of Congress and local elected officials, as well as agents of the Federal Bureau of Investigation").

The third factor—the fact of objection and identity of those objecting to disclosure, *see Hubbard*, 650 F.2d at 319—again weighs in favor of disclosure. Only Defendant James objects to disclosure, and he did so only in response to the Press Coalition's Application. He did not, for example, ask to seal the exhibits immediately after the court ruled in his favor. Moreover, this case is unlike *Hubbard*, in which the court observed that there is "broader protection" when a third-party's property or privacy rights are at issue. *See id.* at 319–20. This case involves only the claimed privacy interest of a party.

The strength of the generalized property and privacy interests asserted—the fourth factor— also weighs in favor of disclosure. *See id.* at 320. Defendant asserts a privacy interest because one of the videos was seized from his mobile phone. *See* Def.'s Opp'n at 8. But that privacy interest is weak because the video clip in question depicts his public conduct, and the government obtained the clip through a subpoena that Defendant has not asserted was unlawful or otherwise

4

improper.  *Cf. Hubbard*, 650 F.2d at 320 (observing that the records at issue "were seized from non-public areas").

The fifth factor—the possibility of prejudice—is neutral here.  *See id.* at 321–22.  "[T]he possibility of prejudice to [a] defendant[] by sensational disclosure is a factor which may weigh in favor of denying immediate public access." *Id.*  But the substantiality of such prejudice is informed by multiple factors, including the extent of prior public disclosure.  *See id.* at 322.  Admittedly here, prejudice to Defendant James inheres in the public disclosure of the video exhibits, but prejudice from release is mitigated by the government's prior detailed description of the exhibits' contents and publication of still images.  Although Defendant complains that the government's narrative captures some but not all of the conduct that a jury will have to consider, *see* Def.'s Opp'n at 8–9, he does not contend that the narrative is embellished or materially inaccurate.  He also does not rebut the notion that a rigorous voir dire would root out potential prejudice.  *See Nat'l Broad. Co.*, 653 F.2d at 617 (observing "to the extent that some members of the potential jury pool are so affected by the broadcasting of the tapes that they are unqualified to sit under these standards, voir dire has long been recognized as an effective method of rooting out such bias, especially when conducted in a careful and thoroughgoing manner" (footnote omitted)).  The prospect of prejudice to Defendant James therefore does not overcome the presumption in favor of public access.

Finally, the sixth factor—the purpose for which the video exhibits were introduced, *see Hubbard*, 650 F.2d at 321—also favors release.  The government submitted the exhibits as part of a public filing to convince the court to reconsider Defendant's pretrial release—a permissible statutory request.  That valid purpose—and the court repeats it finds no bad faith on the part of the

5

government—weighs in favor of disclosure.  *Cf. id.* (finding this factor diminished where the records in question were introduced to challenge whether a search and seizure was overly broad).

For the foregoing reasons, the Press Coalition's Application is granted, and Defendant James's Motion to Seal Video Exhibit is denied.  The government shall make available to the Press Coalition the three video exhibits that accompanied its Motion to Reopen Defendant James's Detention Hearing, ECF No. 163, consistent with the procedures set forth in Standing Order 21-28.  The Press Coalition is granted permission to record, copy, download, retransmit, and otherwise further publish these video exhibits.

Dated:  August 23, 2021

Amit P. Mehta
United States District Court Judge