UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Crim. No. 21-CR-28 (APM)** |
| **JOSHUA JAMES** | : | |

## REPLY TO GOVERNMENT'S OPPOSITION TO MODIFICATION OF MR. JAMES' CONDITIONS OF RELEASE

Comes Now, Joshua James, and respectfully files the within reply to the government's opposition to his *Motion to Modify Conditions of Release.*

At issue on Mr. James' motion is whether, after almost five months of compliance with home incarceration, which has included occasional travel outside the home for court-ordered therapy and a trip to the DC area to meet with counsel, Mr. James should now be allowed to leave his home, subject to GPS monitoring, for work purposes during confined hours. In opposition to Mr. James' request, the government references (1) Mr. James' alleged leadership role in the conspiracy; (2) Mr. James alleged assaults on law enforcement on January 6; (3) Mr. James' Post-January 6 conduct; and (4) the fact that Mr. James has received internet donations for legal fees and family expenses while he has been forbidden from working.

Given Mr. James' lack of criminal record, standing in his community, service to our country, laudable disaster relief work, and compliance with his current conditions of release, the governments arguments do not suggest that a modification to allow monitored work release would present a risk of flight or danger to the community.

    **I.**    **MR. JAMES ALLEGED LEADERSHIP IN THE CONSPIRACY**

At the prior bond hearing, this Court previously heard exhaustive argument on the issue of whether the evidence suggested that Mr. James played a leadership role in the alleged conspiracy, or whether his "leadership" role was relegated to the lawful private security detail that he performed on January 5th and 6th.  Ultimately, the Court found the government's allegation of "leadership" to be unpersuasive on the ultimate issue for bond purposes of whether there existed a combination of conditions that could ensure the safety of the community were Mr. James released. During the past five months, Mr. James's compliance with all of the Court's conditions has proven the Court right in this assessment.

As the Court noted at Mr. James' *Motion to Revoke the Detention Order,* the government has proffered no evidence that Mr. James had any plans to enter the Capitol prior to January 6. (ECF 150 at 73.). The government's proffered evidence actually establishes quite the opposite – that Mr. James, after completing the lawful security detail he had come to DC to perform[1], had returned to the Mayflower Hotel, only travelling to the Capitol after hearing it had been breached by others.

## II.     ALLEGED ASSAULTIVE CONDUCT

Count nine of the Fifth Superseding indictment charges Mr. James with assault on a law enforcement officer for conduct that occurred while he was inside the Capitol for approximately seven minutes on January 6.[2]  The assault is allegedly captured in body-cam footage which has been made available to the parties, the Court, and the press. (ECF 163, Exhibit 1; *See also* ECF 360; ECF 269; ECF 270).  The events depicted in the video footage are difficult

---

[2] Mr. James has filed a *Motion for a Bill of Particulars* and a *Motion to Dismiss* challenging the government's failure to allege the identity of the person he is charged with assaulting in Count Nine of the Indictment. (ECF 269, 270).

to parse out when observing in real time but can be better assessed when slowed down. To be clear, no video evidence shows that Mr. James punched, smacked, kicked, or attempted to cause harm to an officer inside the Capitol. While Mr. James may have come into physical contact with officers, as many others did, while being squeezing past and through and being enmeshed in a close crowd, the video footage does not depict him committing an intentional assault against anyone. The government describes three alleged incidents of assault in its *Opposition to Defendant's Motion for Modification of Conditions of Release.* All of the alleged assaultive conduct occurs within a ten-second period of time.

First, the government describes an incident where Mr. James grabs a police officer by the arm and shouts, "You want out?", and "forcefully grabs the officer by the arm". ((ECF 364 at 4). However, the video depicts the officer appearing to be in distress and Mr. James seeking the officer's permission to help him out of the melee. ( Body-worn Camera Footage 2. at 15:18:19. Hereinafter BC-2). The video depicts Mr. James asking the officer twice if he wants out - "you want out?", "you want out?" - then confirming aloud, - "you want out." At the same time, Mr. James appears to be holding out his right arm in an effort to clear a path. At 15:18:20, the video appears to depict Mr. James being pushed back towards the entryway, though it is not clear if he is being pushed by an officer or someone else. At this moment, the officer Mr. James had been trying to help appears to be reaching out for him.  Immediately after Mr. James appears to confirm that the officer "wants out", another police officer grabs Mr. James by the left shoulder and strikes him. (Body-camera Footage 1 at 15:18:23-24. Hereinafter BC-1). Only after being struck, at BC-1 15:18:28, does Mr. James allegedly begin to yell, "Get out of my Capitol." (BC-1 at 15:18:28.)

Second, the government describes "James approaching the officers again and grabbing another officer by both shoulders" and "aggressively yanking the officer toward the Rotunda exit." (ECF 364 at 4-5).  This alleged physical contact is not depicted in any of the provided body-cam videos.[3] (BC-2 at 15:18:25-26).

Third, the government alleges that Mr. James "grabbed a third officer's hand and shield before pulling them both toward the lobby", attempting to steal the shield. (ECF 364 at 5). This characterization is inconsistent with the video footage.  Before Mr. James inquired of the officer in distress if he "wanted out", an unknown woman unassociated with Mr. James in a USA flag hoodie confronts an officer holding a shield and can be seen grabbing the edges of it, eventually with both hands. (BC-2 at 15:17:33). At this point, Mr. James is many feet away, and separated by other people. The unknown woman begins to try to wrestle the shield from the officer. (BC-2 at 15:18:17). Several seconds later, but before he is struck by an officer as described above, Mr. James' hand appears to momentarily come into incidental contact with the hand of the officer holding the shield. (BC-2 15:18:22-23). It is simply not a fair rendition of the video that he ever attempted to take hold of or steal the shield. Two seconds later, Mr. James is turned around and facing the exit, with his back to an approaching female officer. He is apparently about to attempt to leave the Rotunda. While his back is turned to her, the female officer reaches around him and pepper-sprays him, hitting him the side of the temple.  (BC-2 at 15:20:07.).

Whether Mr. James conduct can be stretched within the technical definition of assault or not is for a jury to decide. But no evidence suggests that he intended to harm anyone inside the

---

[3] Upon information and belief, defense counsel has only received body-cam footage from two officers relevant to the alleged assault by Mr. James, while it seems that at least three body-cams would have captured the events.

Capitol on January 6. Considering his history as a law-abiding citizen, the pending assault charge should not be a reason to deny him work release.

### III.     POST JANUARY 6 CONDUCT

The government has been aware for some time that Mr. James and others shared with each other Person One's[4] publicly available "Open Letter to President Trump" urging the President to invoke the Insurrection Act in reaction to the 2020 election results.  However, the government's position that Mr. James "not only circulated the letter **but acted on it**" (emphasis added)  is not supported by the facts. (ECF 364 at 6). Similarly, Mr. James January 10, 2021, text conversation with defendant Ulrich (who is on conditions of release without GPS monitoring or home confinement, ECF 358) speculating incorrectly that the President may have or would soon be invoking the Insurrection Act  does not suggest that allowing Mr. James work release would present a danger to the community. Mr. James is not alleged to have committed any new crimes between January 8, 2021, and his arrest two months later, when he surrendered peacefully to authorities.

### IV.     INTERNET DONATIONS

As a result of this case, Mr. James has been unable to work since March 9, 2021. During his incarceration, his wife organized an online fundraiser in order to help pay legal fees and support their family of five.[5]

---

[4] Person one, who disseminated the same letter to millions on the internet, has not been charged in this case or subjected to any liberty restrictions.

[5] Any money raised for family expenses has been designed not only to help with family expenses while the case is pending and Mr. James is forbidden to work, but in the event that Mr. James is convicted and incarcerated.

At the risk of stating the obvious, the lion's share of the funds raised by the James family will go towards legal fees that grow every day, as the government continues to add defendants and charges to this case. To date, the government is on its fifth superseding indictment, which names 17 defendants. But the team of prosecutors on this case has suggested that additional superseding indictments are possible. The volume of discovery that must be reviewed in the case is unparalleled and includes thousands of hours of video footage and tens of thousands of pages of documents. Mr. James has filed six contested pleadings so far and anticipates filing several more before trial. Trial alone is scheduled to last three months.

The government misleadingly suggests the donations continue to regularly come in: "at an average of about $8,021.58 a week, since his arrest James's family appears to be supporting themselves without needing to let James out of home detention." But they fail to point out that the overwhelming majority of the funds raised by the James family came in the first two months or so after his arrest. In the past 30 days, the amount raised was roughly $1,722. In the past week, the donations totaled only $120.

Finally, while Mr. James and his family have been grateful that the charity of others has allowed them to pay legal fees and gain some family support while Mr. James has been unable to work, he is a hard-working business owner who rightfully desires to support his family rather than relying on others. The fact that others have been willing to help the family up until now does not change the fact that allowing Mr. James to work in his local community at his established business does not present a danger to the community.

For the above-stated reasons, and those argued in his *Motion for a Modification of Conditions of Bond*, Mr. James respectfully requests that his motion be granted,

Respectfully submitted,

By Counsel

_____/s/_____

Christopher Leibig, Esq.
Virginia Bar No. 40594
Counsel for Defendant
114 N. Alfred Street
Alexandria, Virginia 22314
(703) 683 4310
chris@chrisleibiglaw.com

_____/s/_____

Joan C. Robin
Virginia Bar No. 44502
Law Office of Joni C. Robin, PLLC
114 North Alfred Street
Alexandria, Virginia 22314
Ph: 703-349-1111
Fax: 571-279-6851
joni@jonirobinlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of August 2021, I will electronically file the foregoing Notice with the Clerk of Court using the CM/ECF system, which will then send a notification of said filing (NEF) to counsel of record.

_____/s/_____

Christopher Leibig